Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/20/2017 09:11 AM CDT

- 773 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

In re Interest of Austin G., a child
under 18 years of age.
State of Nebraska, appellee, v.
Kayla S. appellant.

___ N.W.2d ___

Filed June 13, 2017.    No. A-16-947.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Parental Rights: Proof.** In order to terminate parental rights, a court must find clear and convincing evidence that one of the statutory grounds enumerated in Neb. Rev. Stat. § 43-292 (Reissue 2016) exists and that termination is in the child's best interests.

3. **Parental Rights: Abandonment: Words and Phrases.** For purposes of Neb. Rev. Stat. § 43-292(1) (Reissue 2016), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child.

4. **Guardians and Conservators: Parental Rights.** Guardianships give parents an opportunity to temporarily relieve themselves of the burdens involved in raising a child, thereby enabling parents to take those steps necessary to better their situation so they can resume custody of their child in the future.

5. ____: ____. Although a guardian becomes the caretaker of the child during the appointment, the parent must still retain an interest in the child and maintain some sort of relationship with the child.

6. **Parental Rights: Abandonment: Intent.** The failure of the parent to have any contact with the child for far longer than the 6 months required by Neb. Rev. Stat. § 43-292(1) (Reissue 2016) demonstrates the intent to

- 774 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

withhold the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child.

7. **Parental Rights: Proof.** Only one statutory ground for termination need be proved in order for parental rights to be terminated.

8. ____: ____. In addition to proving a statutory ground, the State must show that termination is in the best interests of the child.

9. **Constitutional Law: Parental Rights: Proof.** A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit.

10. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit.

11. **Parental Rights: Statutes: Words and Phrases.** The term "unfitness" is not expressly used in Neb. Rev. Stat. § 43-292 (Reissue 2016), but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests.

12. **Constitutional Law: Parental Rights: Words and Phrases.** In discussing the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being.

13. **Parental Rights.** The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other.

14. ____. The best interests of a child require termination of parental rights when a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time.

15. ____. Children cannot, and should not, be made to await uncertain parental maturity.

Appeal from the County Court for Wayne County: Ross A. Stoffer, Judge. Affirmed.

Kyle C. Dahl for appellant.

Eric W. Knutson, Deputy Wayne County Attorney, for appellee.

Mark D. Albin, guardian ad litem.

Pirtle, Bishop, and Arterburn, Judges.

Pirtle, Judge.

## INTRODUCTION

Kayla S. appeals from an order of the Wayne County Court, sitting as a juvenile court, which terminated her parental rights to her minor child, Austin G. Based on the reasons that follow, we affirm.

## BACKGROUND

Kayla is the biological mother of Austin, born in April 2012. On August 6, 2012, the State filed a petition alleging that Austin came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The petition alleged that Austin lacked proper parental care by reason of the fault or habits of Kayla in that she had left him home alone and unattended for an extended period of time. A motion for temporary custody was also filed on August 6, and the court entered an order placing Austin in the temporary care, custody, and control of the Nebraska Department of Health and Human Services (Department).

On August 13, 2012, an adjudication hearing was held, wherein Kayla entered a plea of admission to the allegation in the petition, and the court adjudicated Austin pursuant to § 43-247(3)(a). A disposition hearing was held on November 5, 2012, and the stated permanency goal was guardianship with Terry G., Austin's paternal grandmother. Austin was placed with Terry on October 11, 2012.

In December 2012, Kayla and the Department each filed a consent and waiver to the appointment of Terry and her husband as guardians for Austin. On December 17, the court entered an order discharging the Department from its legal custody of Austin and appointing Terry and her husband as Austin's legal guardians.

- 776 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

Kayla filed a motion for a visitation plan on May 3, 2013, asking the court for an order granting her specific time with Austin. On August 5, the court entered an order providing a visitation plan for the parties. It granted Kayla supervised visits, 2 hours in duration, every Monday and Friday. Prior to the order regarding visitation, there was no set visitation. Kayla had to call Terry to set up a time that worked for them both.

On October 25, 2013, Kayla filed a motion to terminate the guardianship, which motion was objected to by the guardians. In April 2014, a stipulation was agreed to by the parties allowing the guardianship to continue. The court approved the stipulation in May. In October, Kayla filed a motion to dismiss the motion to terminate the guardianship and the court entered an order which dismissed the motion to terminate the guardianship.

On May 7, 2015, the guardian ad litem for Austin filed a motion to terminate Kayla's parental rights, alleging that statutory grounds existed to terminate under Neb. Rev. Stat. § 43-292(1) through (3) and (6) (Reissue 2016) and that termination was in Austin's best interests. Trial on the motion to terminate was held on 3 days between October 2015 and June 2016.

The caseworker appointed to Austin's case after he was removed from Kayla's care testified that she initially wanted to do an in-home plan for Austin so he could be placed back in Kayla's care. However, Kayla missed a team meeting at which time the plan was discussed, and the caseworker testified that she had a difficult time locating Kayla after Austin was removed. When she did make contact, Kayla had no home for Austin to go to, and she had no means to provide for him. The caseworker's involvement with Austin's case ended after the guardianship was established in December 2012.

Kayla testified that she was charged with child abuse as a result of leaving Austin home alone, as alleged in the petition to adjudicate, and was sentenced to probation in October 2012.

- 777 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
in re interest of austin g.
Cite as 24 Neb. App. 773

Her probation was revoked after she was charged with driving under suspension. She was sentenced to 23 days in jail.

Kayla testified that she was using methamphetamine between August and November 2012. She testified that during that time, she missed meetings with the caseworker, but made a few of the visits with Austin that were set up. She also testified that she had to move out of the home where she was living when Austin was removed and that she was homeless for a period of time.

Kayla completed an alcohol and drug evaluation in December 2012, which recommended "intensive outpatient treatment," which she participated in and completed in the fall of 2013. She testified that she has not used alcohol and drugs since November 2012.

Kayla lived at a homeless shelter from November 2012 through February or March 2013. She then moved in with her parents in Pilger, Nebraska. Kayla's father is a convicted sex offender as a result of sexually assaulting Kayla's sister. Kayla lived with her parents until May, when she moved to Stanton, Nebraska. On December 9, Kayla married Jacob M., and they moved to Norfolk, Nebraska, in February 2014. In August, Kayla and Jacob moved to Independence, Missouri, and lived with Jacob's mother. In March or April 2015, they moved back to Nebraska and lived in a hotel in Tecumseh, Nebraska, where Jacob was doing maintenance work. Kayla and Jacob moved back in with Kayla's parents in Pilger in August. This is where they were living on the first and second days of trial, October 26, 2015, and March 28, 2016, respectively. Kayla testified that she and Jacob planned to continue living with her parents. However, on the last day of trial, June 21, Kayla and Jacob were living in Wayne, Nebraska. They have two children together—the first was born in May 2014, and the second in April 2015. On the last day of trial, Kayla stated she was pregnant.

Kayla has been employed at various times since the guardianship was established. She was employed full time by a

- 778 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

manufacturing company from October 2012 to January 2013. She then worked part time for a restaurant for a few months in 2013. After that, she worked at a convenience store for 6 months to a year. She did not work when she lived in Missouri. Kayla started working for a consulting service in November 2015, working 25 to 30 hours per week. She testified that Jacob was not working at that time because he was in jail for 4 months. On the last day of trial, Kayla did not have a job. She testified that she quit her job with the consulting service in May 2016, because Jacob obtained employment in Wayne and they moved there.

Kayla testified that she has been paying child support "here and there." She testified that the only payments that have been made have been taken out of her paychecks during times she was working; she has not made any payments on her own. She also testified that she has not provided anything else for Austin, such as clothes, diapers, or toys, since September 2014.

Kayla testified that her last visit with Austin was in August 2014, before she and Jacob moved to Missouri. She admitted to having Terry's telephone number, and Terry testified that her number has not changed. Kayla testified that she did not always have a telephone, but had use of Jacob's mother's telephone during the time she lived in Missouri. When Kayla moved back to Nebraska, she had access to a telephone through the hotel where she and Jacob were living. She also had access to a telephone at her parents' home. Terry testified that Kayla has provided her with various telephone numbers over the years and that Kayla usually had a telephone.

At the time Kayla moved to Missouri in August 2014, there was a pending criminal charge of driving under suspension against Kayla in Madison County, Nebraska. An arrest warrant was subsequently issued, which remained outstanding until she moved back to Nebraska in 2015. She testified that the arrest warrant and the charge were resolved around August or September 2015.

- 779 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

Kayla testified that she has made positive changes to her life since Austin was removed in August 2012. She testified that she has not used drugs or alcohol since 2012. She has not had any criminal charges against her since 2014. She has completed intensive outpatient therapy and a "Moral Recognition Therapy" class.

Terry testified that she kept track of Kayla's visits on calendars. These calendars were entered into evidence, as well as a summary of the visitation tracked in the calendars that was prepared by Terry. Terry testified that Kayla had no visits with Austin between January and April 2013 and that Kayla did not contact Terry during that time. Between September 2012 and February 6, 2015, 251 visits were scheduled. Kayla attended 108 of the visits and missed 143 visits.

Terry stated that Kayla's last visit was August 5, 2014. She testified that from August 5 until October 1, she tried to call or text Kayla on a regular basis to offer her visitation, but got no response. She testified that there has been no contact between Kayla and Austin since August 2014. Kayla had not sent him any letters, cards, or gifts.

Terry testified that Kayla asked for a visit with Austin at a court appearance in December 2015, which was after the termination trial had begun. Terry told her it would not be in Austin's best interests because this would be the first contact with him since August 2014.

Kayla testified that she did not have many visits with Austin between June and August 2014 because Terry's house was destroyed by a tornado in June and Terry was busy with the cleanup and could not meet for visits. Kayla also testified that she did not have transportation at that time. She testified that in August 2014, Terry stopped the visits. Kayla stated that she kept trying to make contact and that it was not her intent to stop seeing Austin. She also testified that after moving to Missouri in August 2014, she texted Terry one time and did not get a response. She stated that Terry never tried to contact her. She also admitted that when she

- 780 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

lived in Missouri, she never gave Terry her address or current telephone number.

She testified that she tried contacting Terry on one occasion when she moved back to Nebraska from Missouri, but she got no response. Kayla also testified that she tried to take Austin presents on his birthday in April 2016, but Terry would not accept them.

Terry testified that after the tornado hit in June 2014, she still offered Kayla visits on Mondays and Fridays at an alternate location. She testified that Kayla did not try to contact her between September and December 2014 after Kayla moved to Missouri. She testified that she did not receive any voice messages or texts from Kayla on her telephone. She also testified that she did not receive any calls or texts from Kayla in 2015. Terry testified that she has had the same telephone number for at least the past 10 years.

Following trial, the court entered an order terminating Kayla's parental rights to Austin and finding that there was clear and convincing evidence to support termination under § 43-292(1) through (3), but not (6). It further found that termination of Kayla's rights was in Austin's best interests.

## ASSIGNMENTS OF ERROR

Kayla assigns that the juvenile court erred in (1) finding there was clear and convincing evidence that statutory grounds existed to terminate her rights and (2) finding there was clear and convincing evidence to establish that terminating her parental rights was in Austin's best interests.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of

- 781 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

the facts over the other. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

## ANALYSIS

*Statutory Grounds for Termination.*

[2] In order to terminate parental rights, a court must find clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). In the present case, the juvenile court found that the State established by clear and convincing evidence that grounds for termination existed under § 43-292(1) through (3).

[3] Section 43-292(1) requires proof that "[t]he parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition." For purposes of § 43-292(1), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014).

The motion to terminate Kayla's parental rights to Austin was filed on May 7, 2015. At the time the motion was filed, Kayla had not had a visit with Austin since August 5, 2014, which was 9 months before the motion was filed. She had no contact with Austin during that time. She did not send him any letters, cards, or gifts. Since at least September 2014, she had not provided him with any necessities, such as clothes or diapers, nor had she provided any nonnecessities, such as toys. She moved out of the state from August 2014 to March or April 2015, indicating an intent to withhold her "presence, care, love, protection, maintenance, and the opportunity for the display of parental affection" for Austin. See *id.* at 612, 849 N.W.2d at 513. Even after moving back to Nebraska, she failed to have contact with Austin. She testified that she had

- 782 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

Terry's telephone number, and Terry testified that her number has not changed for at least 10 years. She also testified that she either had a telephone or had access to a telephone, yet she never contacted Terry. Kayla testified that she tried to contact Terry once after Kayla moved to Missouri and once after she returned to Nebraska, but Terry testified that she had not received any calls or texts from Kayla. Terry also testified that Kayla did not respond when she tried to contact her about having visits with Austin. Kayla provided no reasonable explanation for her failure to have contact with Austin since August 5, 2014. As of the first day of trial, October 26, 2015, Kayla had not had contact with Austin for over 14 months.

[4-6] The fact that Austin was in a guardianship does not excuse Kayla's lack of contact. Guardianships give parents an opportunity to temporarily relieve themselves of the burdens involved in raising a child, thereby enabling parents to take those steps necessary to better their situation so they can resume custody of their child in the future. *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004). Although a guardian becomes the caretaker of the child during the appointment, the parent must still retain an interest in the child and maintain some sort of relationship with the child. See *id.* The failure of the parent to have any contact with the child for far longer than the 6 months required by § 43-292(1), as in the present case, demonstrates the intent to withhold the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. We conclude that the juvenile court did not err in finding that § 43-292(1) was proved by clear and convincing evidence.

[7] Only one statutory ground for termination need be proved in order for parental rights to be terminated. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). Because we conclude that there is clear and convincing evidence to show that Kayla abandoned Austin pursuant to

- 783 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

§ 43-292(1), we need not discuss the other statutory grounds which the court found to exist.

*Best Interests and Parental Fitness.*

[8-13] Kayla next asserts the juvenile court erred in finding that termination of her parental rights was in Austin's best interests. In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Kendra M. et al., supra.* A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Kendra M. et al., supra.* In discussing the constitutionally protected relationship between a parent and a child, we have stated: "'"'Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being."'"' *Id.* at 1033-34, 814 N.W.2d at 761, quoting *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992). The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Kendra M. et al., supra.*

As the juvenile court pointed out, the evidence presented in this case is different from the evidence in most termination cases, because Austin is in a guardianship situation and the Department is not involved:

- 784 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

The nature of this case, being in the form of a termination of parental rights filed while the child is in a guardianship, prevents the presentation of the type of best interest evidence typically found in a juvenile court termination of parental rights case. With the child in a guardianship, no [Department] or family support workers are involved. Since the child is doing well in the current placement, there is no need for therapists. However, the person most able to testify about Austin's condition, circumstances and best interests, both before and after the filing of the termination petition, Austin's guardian/grandmother [Terry], did testify and confirmed Austin's relationship with her and her husband and that he is doing well in the current placement.

Kayla argued in her brief and at oral argument that *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013), is similar to the case at hand and should be relied on in determining whether termination is in Austin's best interests. In *Kenneth C.*, the district court terminated the father's parental rights to his son, finding that the father had abandoned the child under § 43-292(1) and that termination was in the child's best interests. The father had not had any direct contact with his son in approximately 4 years. On appeal, the Nebraska Supreme Court reversed the termination of the father's parental rights, concluding that it had not been shown that termination was in the child's best interests. The court stated that statutory grounds are based on a parent's past conduct, but the best interests element focuses on the future well-being of the child. The court found that there was ample evidence in the record that the father had not fulfilled his parental obligations to the child in the past, but there was almost no evidence as to whether the current circumstances were such that termination of the father's parental rights would be in the child's best interests.

We conclude that *Kenneth C. v. Lacie H., supra*, can be distinguished from the case at hand. *Kenneth C.* is procedurally

- 785 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

different from the present case in that *Kenneth C.* was a paternity action brought by the father seeking a determination of paternity and visitation with the child, and the mother counterclaimed with a motion to terminate the father's parental rights. The present case is a termination action brought by Austin's guardian ad litem and involves a guardianship situation.

Further, in *Kenneth C.*, the court noted that the child's need for permanency was not of the same magnitude as a child who has been in foster care for an extended period of time because the child would have permanency with his mother, regardless of whether the father's rights were terminated. In the present case, although Austin has not been in foster care, he has been in a temporary guardianship for an extended period of time.

Finally, we determine that there is sufficient evidence to make a determination of whether the current circumstances are such that termination of Kayla's parental rights would be in Austin's best interests.

Kayla's actions from the time Austin was removed from her care in August 2012 to the time of trial have demonstrated her unwillingness to be Austin's parent. The caseworker testified that Kayla was difficult to locate right after Austin was taken away and that Kayla missed a team meeting to discuss a plan for Austin's care. After the guardianship was established, Kayla's visits with Austin were inconsistent. Between September 2012 and February 6, 2015, Kayla had missed over one-half of her scheduled visits. As previously discussed, Kayla had not had contact with Austin since August 2014.

Austin was removed from Kayla's care when he was less than 4 months old. He turned 4 years old during the course of the termination trial. Austin has had no relationship with Kayla and certainly nothing that resembles a parent-child relationship. There was no evidence of any type of bond between Austin and Kayla, and nothing to show that Austin knows that Kayla is his mother. Terry testified that she did not remember Austin ever calling Kayla "'Mom'" when he had visits, and

- 786 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

she stated that Austin called Kayla the babysitter's name a couple times. Further, as the juvenile court stated:

> One thing that is clear from the evidence is that Austin will suffer no consequences from the termination of the parental relationship with [Kayla] that is inherent in a termination of parental rights since [Terry] testified that there is no such relationship and that Austin has no knowledge of his mother. There was no evidence presented of a beneficial bond between Austin and his mother. This evidence was not contradicted by [Kayla] other than testimony about inconsistent visitations that took place prior to August, 2014; those visitations taking place at or prior to the time Austin was approximately 30 months old. In contrast, to not act at the present time would place Austin in a situation where he might lose the only "parents" he has known since he was approximately eight months old.

The guardianship has been in place since December 2012. At the time of trial, Kayla indicated that she was not asking for custody of Austin and that she was not opposed to continuations of the guardianship. Kayla had filed a motion to terminate the guardianship in 2013, but the motion was subsequently dismissed by Kayla. The record demonstrates that Kayla has been and continues to be content with Terry's providing Austin the emotional and physical care he needs and has no intention of trying to regain custody.

Although Kayla has made progress in regard to her lifestyle since August 2012, she continues to struggle with stability in housing and employment. She has moved multiple times to various towns and out of state. She had most recently moved between the second and third days of trial, March 28 and June 20, 2016, respectively. She and Jacob moved from Kayla's parents' house in Pilger to Wayne. Kayla has struggled to have her own housing, living with her parents on two occasions (including her father who is a convicted sex offender) and her mother-in-law. She has also had inconsistency in employment,

- 787 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
IN RE INTEREST OF AUSTIN G.
Cite as 24 Neb. App. 773

resulting in her failure to consistently pay her court-ordered child support. On the third and last day of trial, Kayla was not working because she had quit her job because they moved to Wayne.

[14,15] Based upon our de novo review of the record, we find clear and convincing evidence that Kayla's personal deficiencies have prevented her from performing her reasonable parental obligations to Austin in the past, and would likely prevent her from doing so in the future. Accordingly, the presumption of fitness has been rebutted. We also find that it was shown by clear and convincing evidence that termination of Kayla's parental rights would be in Austin's best interests. The best interests of a child require termination of parental rights when a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time. *Wayne G. v. Jacqueline W.*, 21 Neb. App. 551, 842 N.W.2d 125 (2013). Children cannot, and should not, be made to await uncertain parental maturity. *Id.*

## CONCLUSION

We conclude that the county court for Wayne County, sitting as a juvenile court, did not err in terminating Kayla's parental rights to Austin. Accordingly, the court's order is affirmed.

Affirmed.