IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF LILLIE C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF LILLIE C., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

FREDERICK C., APPELLANT.

Filed January 8, 2019.    No. A-18-529.

Appeal from the Separate Juvenile Court of Lancaster County: LINDA S. PORTER, Judge. Affirmed.

Nancy K. Peterson for appellant.

Patrick F. Condon, Lancaster County Attorney, and Maureen E. Lamski for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Frederick C. appeals from the order of the separate juvenile court of Douglas County that terminated his parental rights to his daughter, Lillie C. On appeal, Frederick challenges the juvenile court's findings that termination of his parental rights was warranted under Neb. Rev. Stat. § 43-292(2) (Reissue 2016) and that termination was in Lillie's best interests. Based on our de novo review of the record, we affirm.

- 1 -

BACKGROUND

Lillie was born in January 2017, to Hasina G. and Frederick. Since Lillie's birth, Frederick has held himself out as her father, and his paternity was confirmed by later genetic testing. We note at the outset that Hasina's parental rights under § 43-292 were terminated on February 5, 2018, but she does not appeal that decision. Thus, we will only discuss facts that are pertinent to Frederick's appeal.

Following Lillie's birth, Frederick attended three or four medical appointments with Hasina and Lillie. Frederick had no steady employment but had worked for various temporary employment agencies and for friends during 2016 and 2017. He testified that he always had money coming in and would help with Lillie's expenses as he was able. He stated that he purchased formula, bottles, and clothing for Lillie after she was born.

Frederick has fathered five children in addition to Lillie, who were ages 24, 21, 13, 12, and 11 years old at the time of the hearing on the motion to terminate parental rights in March 2018. With the exception of his oldest child, Frederick said he had lived with each of his children at one time or another. Frederick testified that his six children have five different mothers. Frederick acknowledged that when his relationships with his children's mothers failed, he was the one to leave. On several occasions, his past incarcerations led to the severance of his relationships with his children and their mothers. As of April 17, 2018, Frederick owed over $57,000 in total child support obligations related to his children who were ages 21, 13, 12, and 11 years old. Child support payment history reports demonstrated that approximately $1,400 was collected from him involuntarily during 2016. His last voluntary payments of child support occurred in 2015 when he paid approximately $140.

Initially Frederick testified that he lived with Hasina from the time of Lillie's birth in January 2017 until March 2017 when Hasina and Lillie moved in with Hasina's parents. Frederick testified that after Hasina moved in with her parents, she did not allow him access to Lillie until the Nebraska Department of Health and Human Services (Department) became involved sometime in May 2017. Later in his testimony, Frederick stated that he ended his relationship with Hasina in December 2016 and moved in with a woman named Kiera until April 2017 when things ended with her. He subsequently moved in with a different woman, Jennifer, in April 2017. At the hearing on the motion to terminate his parental rights, Frederick testified that he was again in a relationship with Kiera. He estimated he lived in three or four different residences from December 2016 until June 2017.

On May 9, 2017, the separate juvenile court of Lancaster County ordered the Department to take emergency custody of Lillie following the filing of a petition and affidavit in support thereof which recounted events that indicated her health and well-being were at risk. Elizabeth Schropp, a children and family services specialist with the Department, testified that Lillie was physically removed on May 11, 2017, once she was located. Following Lillie's removal, a sample of her hair was tested, which showed she had been exposed to methamphetamine and cannabinoids.

Lillie was placed in the care of foster parents unrelated to her, and she remained there through the time of the termination hearing. Lillie's older half brother, with whom she shares a mother, was also living with the same foster parents. The foster mother testified that Lillie

- 2 -

appeared anxious when she arrived and said that Lillie was slow to physically relax. Lillie also had an eczema breakout when she was first placed in foster care. During the following months, Lillie grew happier, calmer, more social, and was easier to pacify when she got upset.

Schropp first met with Frederick on May 25, 2017, when she evaluated the appropriateness of his residence to host visitations with Lillie. Schropp testified that the apartment Frederick lived in was leased by Jennifer but was acceptable for visitations that were supervised. However, Schropp also noted the Department's concern that Jennifer had children who were previously permanently removed from her care and that she was on the central registry. Accordingly, Schropp said that the Department would resist any request to place Lillie with Frederick while he shared a home with Jennifer.

Schropp advised Frederick regarding other steps he must complete in order to enhance his chances of Lillie being placed with him, including obtaining a steady source of income. Schropp also requested that Frederick submit to random drug testing to determine whether he was clean and ought to be considered for placement. Frederick declined, telling Schropp that he wanted to first discuss the possible drug testing with his attorney. No drug tests occurred.

Frederick was allowed 20 hours' visitation per week, and he had four visitations with Lillie between May 27 and June 1, 2017. While the foster parents provided necessary supplies such as formula and diapers for the first three visits, Frederick provided some of the supplies for the fourth visit. Frederick told Schropp that he had asked a friend to purchase formula and food for Lillie.

On June 2, 2017, Frederick was arrested and charged with three felony offenses including possession of a firearm by a prohibited person, driving under a revoked license, and possession of a controlled substance (methamphetamine). Frederick told the arresting officer that he intended to get high. Pursuant to a plea agreement, Frederick pled guilty or no contest to an amended information, which charged him with attempted possession of a firearm by a prohibited person. On February 1, 2018, he was sentenced to a term of 4 to 8 years' imprisonment and received credit for 243 days of time served dating back to the date of his initial arrest. Frederick testified that he will be eligible for parole in June 2019. If not paroled, his date for absolute release will be in June 2021 if he does not lose any good time.

On June 5, 2017, the State filed a supplemental petition, which sought to adjudicate Lillie as a juvenile defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) with respect to Frederick. The supplemental petition alleged that Lillie lacked proper parental care by reason of the fault or habits of Frederick and cited Lillie's removal on or about May 9, 2017, her subsequent positive drug test, and Frederick's arrest on June 2, 2017. On February 5, 2018, Lillie was adjudicated as a juvenile defined by § 43-247(3)(a) with respect to Frederick.

At the Lancaster County Jail, Frederick completed the Common Sense Parenting course, which met twice weekly for 8 weeks. Frederick said the course taught him how to better deal with the stress of parenting. He also completed the Within My Reach Relationship and Communication Program. That program also met twice weekly for 8 weeks, and Frederick said it taught him better communication skills for use in his relationships. Since being placed in the custody of the Department of Corrections, Frederick has been placed on waiting lists for an intensive drug treatment program and the prison's Violence Reduction Program.

Frederick has expressed a desire to have visitations with Lillie while he is incarcerated, but he acknowledged not expressing this desire to the Department caseworker when he was first incarcerated. However, the current caseworker, Brendamae Stinson, testified that she is aware of Frederick's desire to have visitations with Lillie in the prison. She said that the first step toward approving visitations is for Frederick to mail her a visiting form from the prison but that he had not done so as of the date of the hearing. She also stated that prison officials had not provided the form to her despite her requests. Additionally, the Department would have to contract with a visitation worker who is approved by the prison and would transport Lillie and supervise the visitation. Stinson said that visitation workers willing to supervise visits in prison are rare.

While incarcerated, Frederick has also sent letters requesting that Lillie's foster parents send him photos of her and updates, which the foster parents have done. Frederick has not provided any form of support for Lillie to her foster parents. They have not received money, clothing, or food, for example.

On February 7, 2018--2 days after Hasina's parental rights to Lillie were terminated--the State moved to terminate Frederick's parental rights to Lillie. The State alleged that Frederick substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection to Lillie or her sibling as set forth by § 43-292(2). The State further alleged that termination of Frederick's parental rights was in Lillie's best interests.

A hearing on the motion to terminate Frederick's parental rights was held on April 20, 2018. The State called four witnesses to testify: Frederick, Lillie's foster mother, and two caseworkers. The court found by clear and convincing evidence that Frederick substantially and continuously or repeatedly neglected and refused to give Lillie or a sibling of Lillie, necessary parental care and protection and that termination of Frederick's parental rights was in Lillie's best interests. On May 1, 2018, the juvenile court terminated Frederick's parental rights to Lillie.

In terminating Frederick's parental rights, the juvenile court emphasized the circumstances surrounding Frederick's June 2, 2017, arrest. The court noted that Frederick chose to illegally drive an automobile and to illegally possess a firearm and a dangerous controlled substance, from which he intended to get high. This incident occurred even after Lillie had already been removed and placed in foster care.

Moreover, the court found that Frederick had a history of neglecting his other minor children's financial and emotional needs over a period of decades. This included not being actively involved in any of their lives and owing over $57,000 in child support. The court found that Frederick's history of criminal conduct, drug use, and loss of relationships with his other children suggested his need for a long period of rehabilitation before Lillie could be placed in his care. His actions therefore constituted neglect of Lillie or siblings. Thus, the court found that termination was warranted under § 43-292(2) and was in Lillie's best interests.

Frederick now appeals.

## ASSIGNMENTS OF ERROR

Frederick argues on appeal that the juvenile court erred in finding that a statutory ground for termination of his parental rights under § 43-292 existed and that termination of his parental rights was in Lillie's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Kane L.*, 299 Neb. 834, 910 N.W.2d 789 (2018). When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proven. *In re Interest of Brettany M. et al.*, 11 Neb. App. 104, 644 N.W.2d 574 (2002).

ANALYSIS

*Statutory Ground for Termination.*

In order to terminate parental rights under § 43-292, the State must prove by clear and convincing evidence that one or more of the statutory grounds listed in the section have been satisfied and that termination is in the child's best interests. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). Only one statutory ground for termination needs to be proved in order for parental rights to be terminated. *In re Interest of Kendra M.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). In the present case, § 43-292(2) was the only statutory ground alleged against Frederick, which allows termination when "parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection."

Our courts have consistently held that a parent need not have physical possession of a child to demonstrate the existence of neglect as contemplated by § 43-292(2). *In re Interest of Joseph S.*, 291 Neb. 953, 870 N.W.2d 141 (2015). The questions of what constitutes neglect and necessary parental care and protection are generally determined on a case-by-case basis. *In re Interest of Elijah P.*, 24 Neb. App. 521, 891 N.W.2d 330 (2017). Under § 43-292(2), the State must establish that the parental neglect was substantial and continuous or repeated. *Id*. Last-minute attempts by parents to comply with rehabilitation plans do not prevent termination of parental rights. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). Our courts have noted that although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. *Id*. Thus, in a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration. *Id*.

Notably, the court in *In re Interest of Jahon S.* held that despite a father's potential to be paroled within a month of the termination hearing, he could not show that he was prepared to be a parent to his son due to his history of parental neglect. In the present case, Frederick insists that his nearness to a possible release from prison, his self-improvement while incarcerated, and his desire to have visitations with Lillie show that he was not neglecting her. On our review, we agree with the juvenile court that the evidence shows otherwise.

Prior to his incarceration, Frederick entirely lacked steady employment or housing and therefore could not provide for Lillie. The record shows that Frederick lived with three different women in three or four different residences during the six months prior to his arrest in June 2017. According to Frederick, he was the named lessee on two of the four residences but was apparently not able to maintain them. Frederick shared one of the homes with a woman whose history with the Department would prevent placement of Lillie in their shared home. Moreover, this pattern of frequently moving from residence to residence appears to be Frederick's pattern over an extended period of time. His account of his past relationships with his older children and their mothers appears to show a pattern of long-term instability with respect to housing. Additionally, Frederick's failure to maintain steady employment caused him to neglect the needs of four of Lillie's half siblings. He has fallen behind on child support payments totaling over $57,000. As of the date of the termination hearing, he had made no voluntary child support payments for over 30 months.

Frederick is presently incarcerated because despite the recent establishment of visitation rights, he ignored his parental responsibility for Lillie and chose instead to drive while his license was revoked, carry a firearm as a prohibited person, and possess methamphetamine, which he intended to use to get high. His actions on June 2, 2017, evidence substantial neglect of Lillie, who had already been removed and placed in foster care. Frederick's voluntary commission of the above crimes rendered him unable to exercise parental care of Lillie. This is particularly troubling in Frederick's case, given his acknowledged history of committing crimes. Frederick admitted two prior sentences to prison as well as prior jail sentences. He further admitted that his past incarcerations had led to the termination of past relationships with his older children and their mothers. Notably, though repeatedly testifying to various mothers' decisions to deny him visitation with his children, Frederick did not describe any efforts to establish formal visitation with his other children. Thus, while Frederick's most recent incarceration, alone, may not evidence parental neglect, his actions and behavior through over 24 years of parenthood certainly do. Accordingly, we find the juvenile court did not err in finding the existence of a statutory ground for the termination of Frederick's parental rights.

*Best Interests of Lillie.*

Because the State proved the existence of a statutory ground for termination of Frederick's parental rights, we turn to whether the State also showed that termination was in the best interests of Lillie. A parent's right to raise his or her child is constitutionally protected, so the State must also show that the parent is unfit before a court may terminate parental rights. *In re Interest of Jahon S., supra.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *In re Interest of Austin G.*, 24 Neb. App. 773, 898 N.W.2d 385 (2017). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.*

The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *In re Interest of Kendra M., supra.* In discussing the constitutionally protected relationship between a parent and a child, our courts have held, "'"Parental unfitness

means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being."'" *Id.* at 1033-34, 814 N.W.2d at 761. The best interests analysis and the parental fitness analysis are fact-intensive inquiries, and while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Nicole M., supra.*

Frederick argues that no evidence was presented to show that termination of his parental rights was in Lillie's best interests. Our review of the record reveals otherwise. Frederick's behavior prior to his present incarceration suggests parental unfitness. In particular, Frederick has fathered five other children but has not actively participated in their lives. There is no evidence, even from his own testimony, that indicates he has parented any of his children on more than a short-term basis. He has not participated meaningfully in making important parenting decisions or providing emotional or financial support. This past history provides little hope that he will act differently with respect to Lillie.

Moreover, Frederick's history of inconsistent and temporary employment and income, indicates that Frederick will be unable to provide for Lillie once he is released from prison. He has a demonstrated history of not providing financially for his children. Furthermore, he has not been able to maintain permanent full time work, nor has he demonstrated an ability to maintain stable housing. Based on the record, it further appears that he has had ongoing issues with alcohol and drug addiction.

While we commend Frederick for the efforts he has made and the programs he has completed during his period of incarceration, the evidence shows Frederick is unfit. Lillie's best interests are served through permanency and stability, which Frederick concedes is true of all children. There is no evidence in our record that indicates Frederick provided Lillie with either permanency or stability prior to his present incarceration even though he was aware that Hasina had lost custody of several of her older children prior to Lillie's birth.

Frederick concedes that at the earliest, he will be paroled in June 2019. However, that release date is speculative. If not paroled at his first opportunity, he could serve up to an additional 2 years. Therefore, Lillie will be at least 2½ years old and could be over 4 years old by the time Frederick is released. At that point, Frederick would then have to establish and maintain employment, housing, sobriety, demonstrate appropriate parenting skills, and establish a bond with Lillie. Given his history, it is difficult to project when if ever Frederick will attain the skills and maturity necessary to provide for Lillie's needs. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S., supra*; *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Therefore, based on the totality of the evidence, we find that termination of Frederick's parental rights is in Lillie's best interests.

CONCLUSION

Based on the foregoing, we find that the juvenile court did not err in finding that a statutory ground for termination of Frederick's parental rights under § 43-292 existed and that termination of his parental rights was in Lillie's best interests. Therefore, we affirm.

AFFIRMED.