IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF DEVONTAE C. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF DEVONTAE C. ET AL.

STATE OF NEBRASKA, APPELLEE,

V.

DIANNE C.P., APPELLANT.

Filed March 10, 2020.    Nos. A-19-468 through A-19-470 and A-19-473.

Appeals from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

Jessica R. Meyers, Deputy Scotts Bluff County Public Defender, for appellant.

No appearance for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Dianne C.P. appeals from the order of the Scotts Bluff County Court, sitting as a juvenile court, which terminated her parental rights to her minor children. For the following reasons, we affirm.

BACKGROUND

On July 6, 2018, the State of Nebraska filed juvenile court petitions under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) seeking to adjudicate the minor children and to terminate the parental rights of Dianne and Florentino P., the mother and father, to Devontae, Dontae, Jozilyn, and Rozilyn (hereinafter the children). With regard to Dianne, the petitions sought adjudication of

- 1 -

the children based upon allegations that the children lacked safe housing and appropriate parental supervision, and that Dianne's use of alcohol or other substances places the children at risk of harm and/or deprived them of necessary care.

The petitions were filed after Rozilyn, who was 14 months old at the time, had been found unresponsive in a bathtub on June 28, 2018. According to the affidavit of the deputy county attorney in support of temporary custody, an ambulance was dispatched, and upon arrival, Dianne ran to the EMTs with a limp baby, and Dianne informed them that the baby had been in a bathtub under water. Dianne stated that she had done CPR on the child for 10 minutes, who then coughed up water and began breathing. Dianne indicated to the EMTs that the baby's 10-year-old sister found her in the bathtub and brought her to Dianne, at which time the baby was blue. The child was transported to the hospital by ambulance. The affidavit further detailed the history of this family, including 33 prior child protective services intakes, and Dianne's history of alcohol abuse. An order was entered on July 10, 2018, placing the children into temporary DHHS custody.

A contested adjudication hearing was held on September 10 and 11, 2018. The court sustained the allegations of the petition and the children were adjudicated pursuant to § 43-247(3)(a). The court took the issue of termination of parental rights under advisement. On October 12, the court found that it was not in the best interest of the children to terminate Florentino and Dianne's parental rights. The court noted that parental rights should not be terminated unless it is a last resort solution, and "this family is not at that state . . . yet."

Disposition was held on October 24, 2018. The court adopted the case plan prepared by DHHS. With regard to Dianne, the court ordered that she complete a parenting assessment, complete the Women's Trauma Group, submit to random drug testing, and complete an updated substance abuse evaluation.

On January 29, 2019, the State filed a new motion seeking to terminate Dianne's parental rights to the children. This motion did not seek to terminate the parental rights of the father. Trial on this motion was held on March 21 and 25, 2019. The following evidence was presented at trial.

First, the State called Kat Vallejo, a substance abuse counselor who saw Dianne on October 8, 2018. Dianne had already completed a mental health and substance use evaluation at Cirrus House prior to her meeting with Vallejo. The evaluation described Dianne's history of alcohol, including periods of sobriety as well as periods where she drank up to twelve alcoholic beverages per day. At the time of the evaluation, the screening tests indicated no reported problem with alcohol abuse. However, the evaluation noted that "it would be inappropriate to rule out substance use issues without a long period of confirmed sobriety and adherence to prescribed medication." The evaluation confirmed diagnoses of borderline personality disorder, Bipolar I disorder, posttraumatic stress disorder, and cannabis use disorder. Dianne told Vallejo that she had minimized her drinking on the evaluation and had been drinking more often. Vallejo believed Dianne qualified for residential treatment and encouraged Dianne to redo her evaluation at the Cirrus House. However, on October 17, Dianne requested admission to an intensive outpatient program (IOP) instead. Dianne started the program on November 26. She attended IOP on December 13 and 17, but stopped attending after that.

Next, the State called a series of law enforcement officers to testify about various interactions with Dianne over the years. Scotts Bluff County Deputy Sheriff Chris Calvert contacted Dianne on August 21, 2014, and February 12, 2015, both contacts related to reports of

domestic disturbance. Calvert testified that during the February 2015 contact, he smelled alcohol on Dianne. Next, Gering Police Sergeant Travis Enlow testified to contacting Dianne on July 1, 2016, in response to a loud music complaint. He testified that he could hear yelling and banging from Dianne's apartment. Dianne displayed signs of intoxication at the time. Enlow placed Dianne under arrest and testified that she was belligerent during the entirety of the arrest. Gering Police Officer Dale Schneider testified that he contacted Dianne on August 4 due to a noise complaint. Schneider could not recall any indication that Dianne had been drinking that night. Gering Police Officer Micah Schroeder contacted Dianne on October 8 in response to a domestic disturbance. Schroeder noted that Dianne showed signs of intoxication, including the odor of alcohol on her person, slurred speech, and bloodshot, watery eyes.

Scotts Bluff County Sheriff's Office Investigator Matt Dodge testified about his investigation resulting from the incident on June 28, 2018, when Rozilyn was found unresponsive in a bathtub at Dianne's residence. Dodge met Dianne at her home on July 3 following the incident and Dianne stated she believed that one of the other children had put the injured child in the bathtub. Dodge testified that he smelled a strong odor of alcohol but Dianne was cooperative with the investigation.

The State also called Ingrid Frohbieter, a victim/witness assistance coordinator employed by the Scotts Bluff County Attorney's office. Dianne called Frohbieter on the afternoon of the bathtub incident, accusing Frohbieter of interacting in an inappropriate fashion with Florentino after finding Frohbieter's business card in Florentino's vehicle. Frohbieter was concerned because Dianne was not sober, and was incoherent, and irrationally angry.

Following the testimony from the various officers, the children's foster placement and paternal grandmother, Guadalupe P., testified. She stated that after visits with Dianne, the children sometimes misbehave, but this is usually remedied by allowing the children to use an iPad. Next, the State called Caroline Teeple, a child and family specialist with the Department of Health and Human Services. Teeple testified that she was aware of several abuse and neglect cases in relation to this family. The first case was opened in July 2005. Another case was opened on March 8, 2014. The last case before this one was opened on February 25, 2015. Teeple testified that the consistent concern in all of these cases was Dianne's alcohol use. Teeple stated that Dianne's goal in the present case was to demonstrate continued sobriety to ensure she can safely parent her children, but so far her progress was poor. However, Teeple testified that Dianne made fair progress on providing a safe and stable living environment for the children. Teeple testified that services provided to Dianne during this case consisted of drug testing, substance use evaluation, intensive outpatient treatment, counseling, and supervised parenting time.

Teeple testified that Dianne lived with three different friends or relatives before obtaining her own residence on December 1, 2018. One of the friends Dianne had resided with asked her to leave, due to allegations Dianne was drunk in the home. Teeple testified that the friends Dianne lived with told her that when Dianne was having supervised parenting time, Dianne would begin drinking prior to the children arriving and continue going to the kitchen to refill her cup during visits with the children. Dianne did not have consistent attendance for visitation with the children. Teeple testified that the visits were generally chaotic.

Teeple testified that Dianne was tested by breathalyzers at random. During November 2018, Dianne was tested twice, and both tests were negative. In December, Dianne was tested

sixteen times; thirteen tests were negative, three were positive. Dianne attributed the positive tests to her use of hand sanitizer, perfume, and air freshener. In January, 2019, Teeple had documentation for five tests, three of which were positive. Dianne gave explanations for these positive tests of hand sanitizer, hairspray, and perfume. In February, Dianne was tested thirteen times and tested positively four times. In March, there were two tests, one negative and one positive. Teeple also testified that there was concerns about Dianne's house smelling like marijuana.

The State's final witness was Brittany James, a functional family facilitator with Independence Rising. James supervised visits and administered breathalyzer tests for approximately 5 months over the course of Dianne's case. Visits originally occurred in an office until they were approved to occur in the home. During the visits, James would administer a breathalyzer test, or go to Dianne's home to administer a test if a visit was cancelled. James stated that whenever Dianne had a positive result, she would act shocked.

James generally described the visits as chaotic. James stated that during the visits, Dianne would try to plan activities for the children but they never lasted long. She stated that the children did not listen to Dianne, which caused frustration. James testified that Dianne could not control the children's behavior and the children would get upset. During one of the visits, one of the children told James that he hated his life and his family. One of the children was repeatedly bitten by Dianne's granddaughter. James also testified that she was concerned about the odor of marijuana in the house which she noted was constant.

Dianne called her substance counselor, who led an IOP group Dianne attended and stated that Dianne was not expected to attend every session due to transportation issues. The counselor testified that he was not concerned about Dianne's drinking, but acknowledged she has mental health and anger issues. He expected Dianne to complete his IOP program in April 2019.

On May 7, 2019, the Scotts Bluff County Court filed an order terminating Dianne's rights to the children. The court found that the State proved Neb. Rev. Stat. § 43-292(2), (4), and (6) (Reissue 2016) by clear and convincing evidence and that it is within the children's best interests to terminate Dianne's parental rights. Dianne now appeals.

## ASSIGNMENTS OF ERROR

Dianne assigns that the juvenile court committed reversible error in finding the State established by clear and convincing evidence that § 43-292(2), (4), and (6) were satisfied. Further, Dianne assigns that the juvenile court committed reversible error in finding that the State established by clear and convincing evidence that the bests interests of the children are served by severing ties with her.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019).

ANALYSIS

*Statutory Grounds.*

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

The juvenile court found that the State demonstrated by clear and convincing evidence that grounds for termination existed under § 43-292(2), (4), and (6). Dianne asserts that the juvenile court committed reversible error in finding that statutory grounds for termination exist.

Upon our de novo review, we find that the State presented clear and convincing evidence to support the termination of Dianne's parental rights under § 43-292(4). Section 34-292(4) allows a juvenile court to terminate parental rights when "[t]he parents are unfit by reason of . . . habitual use of intoxicating liquor . . . which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile." In the present case, the record indicates that Dianne has repeatedly struggled with substance abuse, specifically the use of alcohol.

At trial, several law enforcement officers testified to various contacts with Dianne, most of which involved some level of alcohol use by Dianne. During the most recent bathtub incident, the investigation showed that the incident was an accident, but also indicated that Dianne had been drinking alcohol close to the time of the incident. Testimony also indicated that Dianne had been asked to leave her previous residence due to alcohol use and that she had consumed alcohol during parenting time. A mental health and substance abuse evaluation at Cirrus House indicated that it was likely Dianne would continue to struggle with substance abuse. During the same evaluation, Dianne told Vallejo that she needed treatment, but failed to complete the treatment provided.

On several occasions, Dianne tested positive for alcohol. Dianne contends that these tests are not reliable because DHHS authorized the use of breathalyzers instead of urinalyses. In her brief, Dianne cites to workers compensation statutes and criminal case law that indicate a positive screening on a breath test must be followed up with a more reliable test. See, Neb. Rev. Stat. § 48-1903 (Reissue 2010); *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010). However, in the juvenile court's order, the court acknowledges that "[s]tanding alone, the breathalyzer tests would have little evidentiary value. However, when considered with the totality of the evidence regarding alcohol use, the court finds it to be some evidence of substance use."

Thus, under the totality of the evidence, we conclude that § 43-292(4) was satisfied. We need not consider whether termination of Dianne's parental rights was proper pursuant to the other subsections of § 43-292, since any one of the statutory grounds in § 43-292 can serve as the basis for termination of parental rights when there is also clear and convincing evidence that termination is in the children's bests interests. See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

*Best Interests.*

In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Austin G.*, 24 Neb. App. 773, 898 N.W.2d 385 (2017). A parent's right to raise his or her child is constitutionally protected. Before a court may terminate parental rights, the State must also show that the parent is unfit. *Id*. There is a rebuttable

presumption that the best interests of a child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). In discussing the constitutionally protected relationship between a parent and a child, "parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. See *In re Interest of Austin G., supra*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Alec S.*, 294 Neb. 784 884 N.W.2d 701 (2016).

Our de novo review of the record leads us to conclude that Dianne is not in a position to perform her parental obligations in childrearing and that such incapacity will likely be detrimental to the children's well-being. The overriding concern is Dianne's failure to complete substance abuse treatment and reach her goal of maintaining sobriety, despite various resources being provided to her. When the children are with Dianne, they are at risk due to Dianne's substance abuse, and their interactions are chaotic. Dianne's inability to control the children's behavior and properly parent has created frustration for both Dianne and the children.

Dianne argues that termination of her parental rights will not help the children achieve permanency, as there is currently no pending termination action against their father. Nebraska courts have previously declined to terminate parental rights when doing so would not help children achieve permanency. See *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509 (2014); *In re Interest of Eden K. & Allison L.*, 14 Neb. App. 867, 717 N.W.2d 507 (2006). However, in those cases, the State had failed to present sufficient evidence that termination was in the children's best interests. *Id.* In this case, the State presented testimony from numerous individuals who were concerned about Dianne's consistent substance abuse without any signs of improvement and her inability to parent the children.

The law does not require perfection of a parent. *In re Interest of Giavonna G.,* 23 Neb. App. 853, 876 N.W.2d 422 (2016). Instead, courts look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.* Dianne has not shown progress or sufficient interest in creating a better environment for her children. In sum, it is uncertain whether Dianne will be able to address the needs of her children while managing her own substance abuse problems. Children cannot, and should not, be suspended in foster care or be made to await parental maturity. *In re Interest of Alec S., supra*.

For these reasons, we find no error in the decision of the juvenile court that the best interests of the children support termination of Dianne's parental rights.

CONCLUSION

We conclude that the juvenile court did not err in terminating Dianne's parental rights as § 42-292(4) was clearly satisfied and termination was in the best interest of the children. We affirm the judgment of the juvenile court.

AFFIRMED.