IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


DAVID W. V. ELISE B.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DAVID W., APPELLEE,

V.

ELISE B., APPELLANT.


Filed August 25, 2020.    No. A-19-1140.


Appeal from the District Court for Lancaster County: ROGER J. HEIDEMAN, Juvenile Court Judge. Affirmed.

Troy J. Bird, of Hoppe Law Firm, L.L.C., for appellant.

No appearance for appellee.


MOORE, Chief Judge, and BISHOP and WELCH, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Elise B. appeals from the order of the District Court for Lancaster County, which terminated her parental rights to her minor child. For the following reasons, we affirm.

## FACTUAL BACKGROUND

Savanna B. was born in December 2006 to Elise and David W. In 2009, David filed a complaint to establish paternity and custody. Our record does not contain any other filings or orders entered with respect to the paternity action until October 30, 2018, when David filed an application for the termination of Elise's parental rights. David alleged that grounds for termination existed under Neb. Rev. Stat. § 43-292(2), (4), and (6), and that termination was in Savanna's best interests. Trial was held on October 29 and 30, 2019. The following evidence was heard at trial.

- 1 -

Prior to 2014, Savanna lived with Elise at all times except for a period of time from June 2007 through October 2008, during which Savanna was in the custody of the Department of Health and Human Services (the Department). In 2014, a parenting plan was created, giving David custody of Savanna and allowing Elise parenting time every other weekend.

Elise and her husband, Douglas S., have two sons who are younger than Savanna. Melissa Mager, a Child and Family Specialist with the Department, testified that she was Elise's case manager in the juvenile case involving these boys from approximately October 2016 through March 2018. Mager testified that Elise's sons were removed in October 2016 due to substance abuse concerns and lack of proper housing. Two affidavits of probable cause for Elise's arrest were entered into evidence. The first affidavit, dated October 1, 2016, alleged Elise was found with both methamphetamine and marijuana while hiding in a hallway of her apartment building with her son. The second affidavit, dated November 17, 2016, alleged that Elise was cited for neglect of her sons when officers found the children outside unattended and several miles from home, while Elise was asleep on the couch at home, exhibiting signs of narcotics use.

Savanna was not made a part of the juvenile case involving the boys because she was in David's custody at the time the boys were removed from the parental home. According to Mager, Elise completed treatment, sporadically complied with drug and alcohol testing, but did not achieve her family support goals. Following Elise's initial substance abuse treatment, she failed to continue attending outpatient treatment. Ultimately, Elise failed to correct the conditions that brought the children in to juvenile court and she voluntarily relinquished her parental rights to the boys in March 2018 after a motion to terminate her parental rights was filed.

Kelly Micek was employed as a mental health therapist for Elise's sons and also supervised visits between Elise and her sons. Micek testified that she worked with Elise's sons to overcome trauma they experienced as a result of physical, emotional, and some sexual abuse by Elise. Micek testified that Elise denied involvement in any sexual abuse. Micek testified to her understanding that at times, Elise hit her sons with a belt or a tent pole and disciplined them by locking them in a bedroom for days at a time without access to food or the restroom. Micek opined that Elise was unable to acknowledge the impact her abuse had on her children.

According to David's current wife, Jessica W., Elise only attempted to exercise her parenting time around seven times between the order and the time of trial. David testified that he frequently invited Elise to Savanna's softball games but Elise never attended. However, at the time of trial, David had not allowed Elise to exercise any parenting time due to safety concerns for approximately 18 months. David testified that Mager told him not to allow contact between Elise and Savanna after Elise's other children were removed from her care. David also testified that Elise never had a safe and stable home, moved frequently, and often changed her phone number.

In October 2018, Elise went to David's home and demanded that David let her exercise her parenting time with Savanna. At the time, Savanna was at the YMCA. Elise left David's home and went to the YMCA and picked Savanna up. Savanna testified that she was surprised that her mother picked her up. Elise took Savanna to her apartment in Lincoln, where Savanna stayed from Friday afternoon through Sunday evening. Savanna testified that on Sunday morning, when she woke up, Elise was not at the apartment. Elise told Savanna she left the apartment to visit someone in jail. Savanna testified that she felt scared being at the apartment by herself.

Savanna testified that since she has lived with her father, she has had infrequent contact with her mother. Savanna indicated that there was a month or two when she had regular visits with Elise and her brothers. Savanna also testified that Elise tried to facilitate contact between Savanna and her former stepfather, Douglas, who Savanna was not supposed to have contact with. According to Savanna, when she was younger, her mom "would have Doug" abuse Savanna and her brothers. In June 2019, Elise texted Savanna claiming that she was going to commit suicide. Savanna stated that she no longer wanted to have visits with her mom because "every time when I'm with her, something bad happens." However, Savanna would like to have limited contact with Elise via text messaging.

Alexandra B., Elise's sister, also testified. Alexandra testified that Elise would discipline Savanna by screaming at Savanna, hitting her in the mouth with the back of her hand, and calling her names. Alexandra testified that Elise would lock Savanna and her other children in their bedrooms, which on one occasion resulted in Savanna falling out of a window and breaking both of her arms. Alexandra opined that the house Elise provided for the children was not clean and that she was neglecting her kids. Alexandra testified that at times, Elise was unemployed and relied on disability benefits as a source of income. Alexandra made several police reports regarding Elise's parenting, including reports that Elise was using drugs. Alexandra opined that Elise's use of drugs hinders her ability to be a parent, but that she is capable of being a good parent when she is not using drugs.

On November 1, 2019 the district court entered an order terminating Elise's parental rights, finding that David established grounds for termination under § 43-292(2), but failed to prove the existence of grounds under subsections (4) and (6). With regard to subsection (2), the court noted the adjudication of Savanna's two siblings, Elise's ongoing lack of insight and motivation to correct the issues which led to that adjudication as well as her failure to comply with the court ordered rehabilitation plan in those cases, and her relinquishment of her parental rights to those siblings. The court found the evidence relating to Savanna established a historical pattern of abuse and neglect by Elise. The court noted that Elise was able to maintain only sporadic visits and had minimal participation in Savanna's life. The court went on to state that Elise offered no evidence to defend the allegations of the application to terminate her parental rights and declined to come for the second day of trial, having left the first day prior to the court's adjournment. The court concluded that the record shows an ongoing pattern of Elise's failure to put her children's needs ahead of her own by failing to provide a safe environment for the children and failing to put herself in a position to parent Savanna in an appropriate manner. The court also found that termination of Elise's parental rights was in Savanna's best interests. Elise appeals.

ASSIGNMENTS OF ERROR

Elise assigns that the district court erred by (1) allowing Alexandra to testify at trial due to lack of proper disclosure, (2) terminating Elise's parental rights under § 43-292(2), and (3) determining that termination was in the best interests of the minor child.

STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings.

However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Wayne G. v. Jaquelin W.*, 288 Neb. 262, 847 N.W.2d 85 (2014).

ANALYSIS

*Testimony of Alexandra.*

Elise argues that the district court erred by allowing Alexandra to testify at trial despite being disclosed to Elise only 3 days before trial. District Court Local Rules § 3-9(D) require that "[t]he parties are under a continuing duty to update all information that is required to appear on the Pretrial Memorandum; however, no amendment may be made to a Pretrial Memorandum 5 or less days prior to trial without consent of the other party or leave of the court." Elise's attorney objected to the witness at trial, which objection was overruled by the court. Whether a party's late disclosure of evidence results in prejudice depends on whether the information sought is material to the preparation of the defense, meaning that there is a strong indication that such information will play an important role in uncovering admissible evidence, aiding preparation of witnesses, corroborating testimony, or assisting impeachment or rebuttal. *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009). Elise argues that based on the late disclosure, she was unable to verify Alexandra's testimony, credibility, or prepare any impeachment evidence. Elise argues that the trial court relied heavily on Alexandra's testimony and therefore she was prejudiced by the district court's decision to allow Alexandra to testify.

The district court terminated Elise's parental rights under § 43-292(2). As set forth above, the district court noted that Elise had a historical pattern of abuse and neglect with Savanna's siblings and minimal participation in Savanna's life. The court did not specifically refer to Alexandra's testimony in the analysis contained in the order of termination. Although Alexandra did testify regarding Elise's abuse and neglect of her children, similar testimony was obtained from Mager, Micek, David, Jessica, and Savanna herself. We also note that Elise's attorney advised the court that he did have an opportunity to visit with Elise after being notified that Alexandra was going to testify, and he conducted a thorough cross-examination of Alexandra. We conclude that Elise was not prejudiced by the late disclosure and the district court did not err in admitting Alexandra's testimony.

*Termination of Parental Rights Under § 43-292(2).*

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S.,* 294 Neb. 784, 884 N.W.2d 701 (2016). Section 43-292(2) states that the court may terminate parental rights when it finds that it is in the best interest of the juvenile and "[t]he parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Upon our de novo review, we find that David presented clear and convincing evidence to support the termination of Elise's parental rights under § 43-292(2).

Elise argues that the trial court erred in terminating her parental rights under § 43-292(2), asserting that much of the testimony in support of this conclusion came from the untimely

disclosed witness, Alexandra. As stated above, several other witnesses testified regarding the abuse and neglect of Savanna and her siblings.

The record shows that Elise admittedly neglected her two sons due to her substance abuse; subjected them to physical, emotional, and sexual abuse (the oldest boy); failed to correct the conditions that led to their removal from her home and adjudication in juvenile court; and ultimately relinquished her parental rights to them. Clearly, the evidence was sufficient to find that Elise failed to provide Savanna's siblings with necessary parental care and protection.

With regard to Savanna, the record shows that Elise rarely attempted to exercise parenting time after David obtained custody in 2014, and did not show up to events she was invited to attend with Savanna. Elise allowed Douglas to abuse Savanna when they were residing together, Elise left Savanna alone in her apartment for several hours, and Elise texted her threatening to commit suicide. Elise did not have stable housing. Further, as noted by the district court, Elise was absent for much of the trial, failing to defend against the allegations.

A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect, as would support termination of parental rights. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). One need not have physical possession of a child to demonstrate the existence of neglect contemplated by statute providing for termination of parental rights based on substantially and continuously or repeatedly neglecting to provide children with necessary parental care and protection. *Id*.

Despite the fact that David denied Elise her parenting time for a period of time, Elise's failure to consistently seek involvement in Savanna's life and provide a safe environment for Savanna is enough to support the termination of Elise's parental rights. Therefore, the district court did not err in terminating Elise's parental rights under § 43-292(2).

*Best Interests*.

In addition to proving a statutory ground, it must be shown that termination is in the best interests of the child. See *In re Interest of Austin G.*, 24 Neb. App. 773, 898 N.W.2d 385 (2017). Elise argues that the trial court erred in determining it was in Savanna's best interest to terminate her parental rights. A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when it has been proven that the parent is unfit. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id*.

The district court noted in the termination order that Savanna needs stability which Elise is clearly unable to provide. The court found that "[s]ubstantial work would need to occur before [Savanna] could be parented by [Elise]." The court further found that Elise is unable to provide appropriate care for Savanna and the totality of the evidence supports a finding that David met his burden of rebutting the presumption that Elise is a fit parent. In our de novo review, we agree with the district court's assessment. Elise has not shown improvement in her parenting skills since she relinquished her rights to Savanna's siblings. Elise has shown little interest in improving her

relationship with Savanna and what little communication has occurred has been harmful. Elise has been unable to maintain a stable home, job, or phone number. Savanna testified that she did not feel safe with Elise. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

For these reasons, we find no error in the finding of the district court that the best interests of Savanna support termination of Elise's parental rights.

## CONCLUSION

We conclude that the district court did not err in terminating Elise's parental rights because conditions listed in § 43-292(2) clearly existed and termination was in the best interests of the child. We affirm the judgment of the district court.

AFFIRMED.